IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEMETRIUS AHMED WRIGHT,

    Plaintiff,

  v.

A. HEDGEPETH, et al.,

    Defendants.
                                   /

No. C 09-4358 CW (PR)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM

(Docket no. 48)

## INTRODUCTION

Plaintiff Demetrius A. Wright, a state prisoner incarcerated at Salinas Valley State Prison (SVSP), filed the above-titled pro se civil rights action pursuant to 42 U.S.C. § 1983.

In response to the Court's order for service of the second amended complaint (SAC), Defendants have filed a motion for summary judgment. Plaintiff has opposed the motion. Defendants, although directed to do so in the order of service, have not filed a reply.

For the reasons discussed below, the motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

The Court draws the following facts from the allegations in Plaintiff's verified SAC and his opposition and declaration filed in response to Defendants' summary judgment motion.[1]

---

[1] See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (holding verified complaint may be used as opposing affidavit under Rule 56); see also Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit); Johnson v. Meltzer, 134 F.3d 1393, 1400 (9th Cir. 1998) (treating allegations in verified motion as opposing affidavit).

1    Plaintiff is a practicing Muslim.  Since his arrival at SVSP
2 he has been, and continues to be, denied access to a properly
3 prepared, nutritionally adequate and medically sound Halal diet,
4 or, alternatively, to a Kosher diet.
5    For the entire month of November 2009, he was denied access
6 to all Muslim services, and on multiple other occasions he has
7 been, and continues to be, denied the ability to attend Islamic
8 services including Ta'leem (educational services), Jumu'ah
9 (mandatory Friday congregational prayer services), and to
10 celebrate the Eid festival twice a year.  He maintains that one of
11 the reasons for these denials is prison officials' reliance upon
12 inaccurate information about Muslim religious requirements
13 provided by the Muslim clergyman, Chaplain Landau, who practices a
14 version of Islam that is widely regarded by most traditional
15 Islamists (such as Plaintiff) as unacceptable.
16    Plaintiff further maintains that the prison's Religious
17 Review Committee, which includes several Defendants, has allowed
18 only two outside companies to provide religious artifacts to
19 Muslim inmates, but these companies have taken money without
20 providing items that have been ordered and their selection does
21 not provide for the religious needs of all Muslims, including
22 Plaintiff.  He states this burdens the practice of his religion
23 because he is indigent and is not allowed to receive donations of
24 approved religious artifacts.
25    Plaintiff claims the above restrictions on his religious
26 practices violate his rights under the Free Exercise and
27 Establishment Clauses of the First Amendment, his right to equal
28 protection under the Fourteenth Amendment, and the statutory

protections afforded to him under the Religious Land Use and Institutionalized Persons Act (RLUIPA).² He seeks injunctive relief and damages.

DISCUSSION

I.  Legal Standard

Summary judgment is only proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson, 477 U.S. at 248 (holding fact to be material if it might affect outcome of suit under governing law). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions,

---

² The Court previously dismissed from the SAC Plaintiff's Fourth and Eighth Amendment claims, which were based on allegations concerning the degradation of his Qur'an by correctional officers, being searched by a female correctional officer, and threats of violence by correctional officers.

answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

II. Analysis

A. Claims Barred by Eleventh Amendment

Defendants move for summary judgment with respect to all claims brought against them in their official capacities. Specifically, they seek summary judgment as to all claims against Warden Hedgepeth, Correctional Administrator Moore, Chaplain Young and Chief of Inmate Appeals Grannis, whom they maintain Plaintiff sues only in their official capacities.

Plaintiff does not dispute that the Eleventh Amendment bars a suit for damages against Defendants in their official capacities. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). He correctly notes, however, that a suit against a state official seeking prospective injunctive relief from unconstitutional state action is not a suit against the state,

4

even if the state is the real party in interest. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Ex parte Young, 209 U.S. 123, 159-60 (1908). Consequently, Plaintiff may proceed with his claims for damages and prospective injunctive relief against all Defendants who are being sued in both their official and individual capacities, and may proceed with his claim for prospective injunctive relief against Warden Hedgepeth, the only Defendant who is sued solely in his official capacity.

Accordingly, Defendants' motion for summary judgment with respect to damages claims brought against Defendants Hedgepeth, Moore, Young and Grannis in their official capacities is GRANTED. Summary judgment is DENIED as to all prospective injunctive relief claims brought against these Defendants in their official capacities and any damages claims brought against them in their individual capacities.

    B.   Claims Against Defendants Grannis, Lewis, Hedrick, Moore and Bonnifield

Defendants Grannis, Lewis, Hedrick, Moore and Bonnifield argue they are entitled to summary judgment because their only role in the alleged violation of Plaintiff's constitutional rights was their denial of Plaintiff's administrative grievances.

In response, Plaintiff argues that his claims against these Defendants are not subject to dismissal because he is not claiming that they failed to process his appeals but, rather, that they have the authority to remedy the violations of which he complains and have failed to do so.

Defendants rely on two Ninth Circuit cases in support of the proposition that the processing of administrative grievances

5

cannot form the basis of a claim for relief under 42 U.S.C. § 1983.  In Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), the Ninth Circuit held that a state's unpublished policy statements establishing a grievance procedure did not create a constitutionally protected liberty interest.  Although the Ninth Circuit did not discuss the plaintiff's claim in the context of any specific constitutional right, state-created liberty interests are an element of Fourteenth Amendment due process claims.  See Sandin v. Conner, 515 U.S. 472, 484 (1995).  In Ramirez v. Galaza, 334 F. 3d 850, 860 (9th Cir. 2003), the Ninth Circuit held that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure," and applied that proposition to reject "Ramirez's claimed loss of a liberty interest in the processing of his appeals . . . ."

The holdings in Mann and Ramirez do not stand for the broad proposition that the processing of an administrative appeal cannot, under any circumstance, form the basis of a claim to relief under § 1983.  Instead, they are limited to holding that a prisoner has no substantive right to a prison grievance system and, therefore, due process claims based on the denial of or interference with a prisoner's access to a prison grievance system are not cognizable.  However, if the individuals who deny a prisoner's appeals had the authority and opportunity to prevent an ongoing constitutional violation, he may be able to establish liability by alleging that they knew about an existing or impending violation and failed to prevent it.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (supervisory official liable under § 1983 if he knew of a violation and failed to act to

6

prevent it); see also Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998) (supervisor who signed internal affairs report dismissing complaint against officer despite evidence of officer's use of excessive force may be liable for damages).

Here, Plaintiff expressly states in his opposition that he is not claiming his right to due process was violated by the denial of his administrative appeals or obstructed access to a prison grievance system. Rather, he claims that Defendants' denials of his appeals violated his rights under the First and Fourteenth Amendments and RLUIPA because they had the authority to remedy the ongoing violations of his religious rights but failed to do so.

Accordingly, Defendants' motion for summary judgment in favor of Defendants Grannis, Lewis, Hedrick, Moore and Bonnifield with respect to their denials of Plaintiff's administrative appeals is DENIED.

C.   Claims Against Defendants Best and Galloway

Defendants Sgt. Best and Sgt. Galloway argue that they are entitled to summary judgment in their favor with respect to Plaintiff's claims that Sgt. Best is responsible for denying him access to all Islamic religious services for the entire month of November 2009, and that Sgt. Galloway has denied him access to Islamic religious services on numerous occasions. Defendants argue that Plaintiff cannot establish a causal link between the actions of Sgt. Best and Sgt. Galloway and the denial of Plaintiff's access to religious services because the undisputed facts show that he was denied such access because the inmate clerk who was responsible for preparing the list of inmates permitted to attend the services either 1) omitted his name from the monthly

7

list, 2) failed to prepare the list, or 3) failed to get the required signatures of correctional personnel to authorize the list.

In response, Plaintiff argues that he has raised a genuine issue of material fact as to whether his inability to attend services was caused by the inmate clerk's omissions or by the actions of Defendants Best and Young, who were charged with checking the accuracy of the list prepared by the inmate clerk and were aware Plaintiff's name should be on the list, but failed to correct the error.  Additionally, Plaintiff states he continues to be denied access to religious services because of Defendants' failure to comply with requisite procedures.

Based on the above, the Court finds Plaintiff has presented evidence that raises a genuine issue of fact as to whether Defendants Best and Young prevented him from attending religious services on the noted occasions.  Accordingly, Defendants' motion for summary judgment on this claim is DENIED.

D.   Claims Concerning Chaplain Landau

Plaintiff claims the violation of his religious rights based on prison officials' reliance upon incorrect information provided to them about the religious practices of the vast majority of Muslims - including Plaintiff and other inmates who have provided declarations - by Chaplain Landau, the clergyman for SVSP's Muslim inmates.

Defendants move for summary judgment on this claim on the ground that Plaintiff is not entitled to a religious clergyman of his own choosing and his disagreement with Chaplain Landau concerning their respective views of Islam does not establish a

1 constitutional violation.  In support of their argument,
2 Defendants cite Ninth Circuit cases which hold that a prisoner is
3 not entitled to have the clergyman of his choice provided for him.
4 In <u>Reimers v. State of Oregon</u>, 863 F.2d 630 (9th Cir. 1988), the
5 plaintiff complained that he was not able to engage in the
6 religious practices of his Pentecostal faith because a particular
7 clergyman had been banned from the prison.  In <u>Allen v. Toombs</u>,
8 827 F.2d 563 (9th Cir. 1987), the plaintiffs complained that they
9 were not able to practice their Native American faith because
10 prison officials would not allow an inmate to lead the Pipe
11 Ceremony when no outside volunteer was available to do so.  In
12 both cases, the Ninth Circuit found that denying the plaintiffs'
13 specific requests did not prevent them from practicing their
14 religion.
15  Plaintiff's claim here is distinguishable because he does not
16 complain that he is unable to practice his religion as the result
17 of being been denied access to a specific clergyman.  Rather, he
18 claims that prison officials are preventing him from practicing
19 the requirements of his faith by relying on the opinions of a
20 Muslim chaplain who represents the religious viewpoints of a small
21 sect of Muslims and not the traditional Islamic teachings adhered
22 to by Plaintiff and other Muslim prisoners.
23  The Court finds applicable the Ninth Circuit's analysis in
24 <u>Ward v. Walsh</u>, 1 F.3d 873 (9th Cir. 1993), in which that court
25 found that the plaintiff's religious practices had been
26 "dramatically curtailed" because the evidence showed that he was
27 required to eat non-Kosher food, did not have access to an
28 Orthodox Jewish rabbi, and was unable to participate in religious

9

services of his Orthodox Jewish faith. Id. at 877-78. Although the prison had provided testimony from an Orthodox Jewish rabbi that private prayer is a significant aspect of the Jewish religion, the Ninth Circuit found such evidence inadequate to show that the plaintiff had alternative ways to practice his faith. Id. It therefore remanded the matter to the district court to determine the alternatives available to the plaintiff by making further findings "as to what is or is not forbidden by [the plaintiff's] religion." Id. at 878. Specifically, the Ninth Circuit held,

> In making these findings, it will be appropriate for the district court to consider [plaintiff's] challenge to the orthodoxy of the rabbi who testified on behalf of the state. In religious matters, we take judicial notice of the fact that often the keenest disputes and the most lively intolerance exists among persons of the same general religious belief, who, however, are in disagreement as to what that faith requires in particular matters. See Thomas v. Review Bd., 450 U.S. 707, 715-16, 101 S. Ct. 1425, 1431, 67 L. Ed. 2d 624 (1981). In this case, [plaintiff] is entitled to argue, with appropriate authorities, that his religious belief is different from the interpretation provided by the witness for the state.

Id.

Similarly, in the present case, the Court finds that Plaintiff is entitled to argue that his religious belief is different from the interpretation provided by Chaplain Landau, which has been relied upon by prison officials to deny him access to practices mandated by his faith. Accordingly, Defendants' motion for summary judgment on this claim is DENIED.

E.  Plaintiff's Remaining Claims

For the reasons discussed above, the Court has denied summary

10

judgment to Defendants based on their arguments that 1) Plaintiff cannot proceed with any claims against them in their official capacities; 2) they cannot be held liable for decisions they made during the administrative grievance process; 3) there is no causal link between their actions and the denial of Plaintiff's access to religious services; and 4) Plaintiff cannot complain about the interpretation of Islamic religious practices provided by Chaplain Landau to prison officials.  Consequently, the following claims in the SAC remain to be resolved: the violation of Plaintiff's federal constitutional rights under the First and Fourteenth Amendments and the violation of his federal statutory rights under RLUIPA.

Accordingly, the Court REFERS the case to the Pro Se Prisoner Settlement Program, as set forth below.

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.   Summary judgment is GRANTED in favor of Defendants Hedgepeth, Moore, Young and Grannis as to all damages claims brought against them in their official capacities.

2.   Summary judgment is DENIED as to all other claims and Defendants.

3.   The Northern District of California has established a Pro Se Prisoner Settlement Program.  Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference.  The Court finds that a referral is in order now that Plaintiff's federal constitutional and statutory claims have survived summary judgment.  Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a settlement conference.

1    The conference shall take place within one-hundred and twenty
2 days of the date of this Order, or as soon thereafter as is
3 convenient to the Magistrate Judge's calendar.  Magistrate Judge
4 Vadas shall coordinate a time and date for the conference with all
5 interested parties and/or their representatives and, within ten
6 days after the conclusion of the conference, file with the Court a
7 report of the result of the conference.
8    The Clerk shall provide an electronic copy of this Order to
9 Magistrate Judge Vadas.
10    This Order terminates Docket no. 48.
11    IT IS SO ORDERED.

Dated: September 30, 2012

CLAUDIA WILKEN
United States District Judge